**The STATE, ex rel. HOLCOMB, Pros. Atty., et al., Appellants,**

v.

**WURST, Aud., Appellee.**

[Cite as *State, ex rel. Holcomb, v. Wurst* (1989), 63 Ohio App.3d 629.]

Court of Appeals of Ohio,
Butler County.

No. CA–01–006.

Decided Aug. 21, 1989.

*John F. Holcomb*, Prosecuting Attorney, and *Daniel G. Eichel*, for appellants.

*Baden, Jones & Scheper Co., L.P.A.*, and *James H. Scheper*, for appellee.

*Per Curiam.*

This is an appeal by plaintiff-appellant, John F. Holcomb, Butler County Prosecuting Attorney, from a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Daniel S. Wurst, Butler County Auditor.

On January 14, 1988, Wurst received an order from the Ohio Tax Commissioner to reassess and reappraise all of the property in Butler County and, pursuant to this order, he prepared a proposal for the solicitation of bids from parties interested in making the appraisal. This proposal contained guidelines for entry into citizens' homes. He eventually accepted the bid of Cole, Layer & Trumbell (hereinafter "CLT"), a well-known national appraisal firm.

Wurst, as auditor, entered into a contract with CLT to perform the appraisal work. As required by R.C. 5713.01 *et seq.*, he sought the Tax Commissioner's approval of the contract. The Tax Commissioner granted approval in an entry dated July 13, 1988. The contract was also submitted to the Butler County Commissioners.

On October 3, 1988, Wurst held a news conference to inform the public about the appraisal. A news release, previously prepared by Wurst, was distributed. It explained the data collection procedures.

That same day, the Hamilton Journal News carried an article about the appraisal program. It stated that Wurst had announced that Butler County officials would, for the first time ever, inspect the interior of every home in the county to reevaluate property values. It also described the procedures the data collectors would follow.

Wurst testified that the reporter from the Journal News had left the news conference early and had misquoted him. The article implied that the interior of all homes in Butler County would be inspected, which was not true. It also omitted any reference to consent or permission to enter a home.

After reading the newspaper article, Holcomb became concerned about the constitutionality of the plan. That afternoon, Wurst called Holcomb. Holcomb questioned Wurst about his authority for interior inspection of homes and voiced his concern. Wurst attempted to explain the inaccuracies in the article, and to explain that data collectors would not enter every home and that entry of a home would occur only upon consent. Holcomb replied that he was going to sue Wurst.

Holcomb's office received many calls that day from citizens upset as a result of the auditor's proposed action. Holcomb decided to sue in his capacity as prosecuting attorney and filed a complaint for declaratory judgment at 8:00 a.m. the following day. Holcomb did not read the proposal, the contract or the press release prior to the filing of the complaint.

On October 21, 1988, Wurst filed a motion to dismiss the complaint for lack of jurisdiction, lack of standing and failure to state a claim upon which relief could be granted. A hearing was held on November 5, 1988. The trial court decided to treat the motion to dismiss as a motion for summary judgment and granted summary judgment in favor of Wurst. This appeal followed.

■ Wurst has filed a motion to dismiss this appeal. He states that the court of common pleas does not have original jurisdiction over a challenge to the constitutionality of a tax statute and may not enjoin procedures ordered by the Tax Commissioner. He contends that because R.C. Chapters 5715 and 5717 establish special statutory procedures for testing the valuation and assessment of property for tax purposes, declaratory judgment is inappropriate. However, the present case does not involve the application of a tax law to a particular parcel of real property, thus the special statutory jurisdiction of the Tax Commissioner is not involved here. Holcomb contests the constitutionality of the entire plan for interior inspection of homes. Declaratory relief is appropriate to determine the constitutionality of the governmental action. See *Katzenbach v. McClung* (1964), 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290.

■ Wurst also argues that Holcomb does not have standing to bring a declaratory judgment action. Under R.C. 309.12, the "watchdog statute," when a public contract is entered into in contravention of law, the prosecuting attorney may bring suit to set aside that contract. This is a remedial statute, the purpose of which is to protect the public. Remedial statutes should be liberally construed to accomplish their purpose. *State, ex rel. Maher, v.*

*Baker* (1913), 88 Ohio St. 165, 102 N.E. 732. Accordingly, we believe Holcomb has standing under R.C. 309.12 to bring this action to challenge the constitutionality of Wurst's actions as county auditor. Therefore, Wurst's motion to dismiss is denied.

We turn now to the merits of the case. In his sole assignment of error, Holcomb states that the trial court erred by granting summary judgment in favor of Wurst and by dismissing his complaint. We find this assignment of error is not well taken. Under this assignment of error, Holcomb presents five separate issues for review. The first issue reads as follows:

"1. A plan by a county auditor for his contractual agents, under Ohio Revised Code §§ 5713.01 et seq., to conduct inspections of the interior of each and every structure in a county for purposes of tax assessment and reappraisal, without valid consent, violates the Fourth Amendment to the United States Constitution."

 Administrative searches are intrusions upon Fourth Amendment interests and are subject to the warrant requirement. *Camera v. Municipal Court of City & Cty. of San Francisco* (1967), 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930, 938. Search by consent is a recognized exception to the requirement for a warrant. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858; *Camera, supra,* at 539–540, 87 S.Ct. at 1736, 18 L.Ed.2d at 941–942.

If the reappraisal plan had involved entry into private homes without a warrant or consent, then it would have been unconstitutional. However, it is clear from the record that the interior inspection of homes was only to be done by consent. Wurst testified that the data collectors would not enter anyone's home without consent. In his proposal for the solicitation of bids, he established guidelines for the entry into private homes, which were later included in the contract with CLT. The proposal stated:

"3.3.7.2. *Interior/Exterior Data Collection—Alternate Bid*

"In addition to the data collection activities described in Section 3.3.7.2, Company staff will measure at least two (2) sides of each structure to verify the dimensions and will attempt to make contact with the owner or adult occupant of each residence to verify the existing property characteristic information, except that if:

"1. If a structure is vacant or permission to inspect the exterior or interior of a structure is denied, then the data collector will estimate the data and will record the fact of and reason for the estimation; or if

"2. After one (1) visit to the parcel the data collector fails to make contact with the occupant, then the data collector will estimate the interior data and

will record the fact that it is an estimate and the date and time of his/her visit and leave a doorknob hanger with the Company's local telephone number informing the resident that an appointment can be made within three (3) days for the Company to inspect the property. Thereafter, the Company will not have the obligation to revisit the parcel for the purpose of collecting data by inspection."

Wurst's press release also indicated that interior inspection of homes would only be by consent:

"The data collectors, who will be talking to property owners during the inspection period, *do not* determine property values. Their only job is to collect and verify information on land and structures, including measurements of buildings. Data collectors and other appraisal workers will carry identification cards identifying them as representatives of the Auditor's Office. [Emphasis *sic.*]

"Data Collectors will *ask* to inspect the inside of homes. If no one is home on the first visit, the appraisal firm will leave a door hanger at the property notifying the owner or tenant that an attempt to inspect has been made. The door hanger also describes the procedure to *request* an inspection at a later date." (Emphasis added.)

After the article appeared in the paper, Wurst stated publicly that entry of homes was always planned to be only with consent. Moreover, Wurst tried to convince Holcomb that entry would only be with consent of the owner.

 If the entries were only to be with consent, the plan would not involve any constitutional violation. Holcomb contends that whatever the intent of the plan was, it was belied by the data collectors' actual mode of operation. He presented the statements of two Butler County homeowners who had allowed the data collectors into their homes because the data collectors displayed badges and the homeowners felt they had no right to object. Holcomb contends that this was not a valid consent because the homeowners acquiesced to apparent authority. However, these statements were not in the form of affidavits. Rather, they were transcripts of interviews done after the filing of the complaint, in which Holcomb's investigator swore that he had heard the person making the statements. These unsworn statements are inadmissible into evidence and should not have been considered by the trial court when ruling on a motion for summary judgment. Civ.R. 56(C); *Mitchell v. Ross* (1984), 14 Ohio App.3d 75, 14 OBR 87, 88, 470 N.E.2d 245, 246. As a consequence, we need not consider them either. However, even if we were to consider them, they do not support Holcomb's claim because it is clear the homeowners voluntarily allowed the data collectors into their homes.

■ Setting aside these inadmissible statements, the thrust of Holcomb's argument is that the contract itself could never be valid because consent in such a situation could never be voluntary. The courts had discussed voluntariness in the context of criminal law.

" * * * It is undisputed that a person waives his Fourth Amendment protection by consenting to a warrantless search. *Davis v. United States* (1946), 328 U.S. 582 [66 S.Ct. 1256, 90 L.Ed. 1453], *Scheckloth v. Bustamonte* (1973), 412 U.S. 218 [93 S.Ct. 2041, 36 L.Ed.2d 854], *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141 [23 OBR 295, 491 N.E.2d 1129]. The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent. *Schneckloth, supra; United States v. Mendenhall* (1980), 446 U.S. 544 [100 S.Ct. 1870, 64 L.Ed.2d 497]." *State v. Barnes* (1986), 25 Ohio St.3d 203, 208–209, 25 OBR 266, 271, 495 N.E.2d 922, 926, certiorari denied (1987), 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 701.

Voluntariness is by necessity a general term.

"Those cases yield no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen. 'The notion of "voluntariness," ' Mr. Justice Frankfurter once wrote, 'is itself an amphibian.' *Culombe v. Connecticut,* 367 U.S. 568, 604–605 [81 S.Ct. 1860, 1880–1881, 6 L.Ed.2d 1037, 1059]. * * * " *Schneckloth, supra,* 412 U.S. at 224, 93 S.Ct. at 2046, 36 L.Ed.2d at 861.

The reappraisal plan contains several features which indicate consent will be voluntary. Consent is requested at the person's home, not at a police station or in a police car. This is the most secure setting possible for the person giving the consent. All individuals giving consent are adult property owners. The inspections take place during the daylight hours. The data collectors are not in uniform, are not armed and do not wear badges. They do carry and display standardized identification cards. However, citizens cannot be expected to allow the data collectors into their homes without proper identification. The data collectors do not have discretion. They must give all residents an *opportunity* to have the interior of their homes inspected. Finally and most importantly, the inspections are for administrative, not criminal purposes. There is no penalty for refusing to consent and no criminal consequence involved in consenting to an inspection.

Holcomb contends that there is a penalty for refusing to consent. If the homeowner refuses to allow the data collectors in and does not call to request them to come at a later time, the data collectors will estimate the data on the

interior of the homes. Thus, the homeowner who exercises his constitutional right risks an inaccurate estimate.

■ Nevertheless, Holcomb presented no evidence to support this proposition. Furthermore, he assumes an adversarial relationship between a citizen and the government. However, even in a criminal case, "[t]here is nothing constitutionally suspect in a person's voluntarily allowing a search." There is no presumption in favor of coercion and against "voluntary relinquishment" of the requirement for a warrant. *Schneckloth, supra*, at 243, 93 S.Ct. at 2056, 36 L.Ed.2d at 872.

The cases Holcomb relies upon all involve situations in which a property owner refused to consent to an administrative search and suffered criminal penalties. In these cases, the state is in a sense the adversary of the owner. In contrast, when state officials enter a private home to conduct an appraisal, nothing is being sought which could be used against the owner. In fact, the appraisal may even benefit the owner. See *Cleveland Bakers Union v. State* (1981), 3 Ohio App.3d 57, 62–63, 3 OBR 67, 72–73, 443 N.E.2d 999, 1004–1005. For example, in the present case, a primary purpose of the appraisal plan was to record depreciation in value of senior citizens' property where homes were remodeled to eliminate facilities no longer needed, thus resulting in a lower tax valuation. The potential for coercion in the reappraisal situation is considerably less than in a criminal case. Holcomb's conclusion that a homeowner's refusal to allow a data collector into the home will result in an inaccurate estimate because of some enmity on the part of the data collectors simply does not follow.

We find no evidence in the record to indicate that any search was to be done without consent. The contract does not involve any constitutional violation and Holcomb's argument has no merit.

Holcomb's second issue reads as follows:

"2. The granting of summary judgment in defendant-appellee auditor's favor was against the manifest weight of the evidence."

Summary judgment is appropriate if (1) there is no issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. Initially, the moving party bears the burden of establishing that no genuine issue as to any material fact exists. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

After the moving party meets this burden, the burden shifts to the nonmoving party. *Mitchell, supra,* 14 Ohio App. at 75–76, 14 OBR at 88, 470 N.E.2d at 246. Civ.R. 56(E) provides:

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

See, also, *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 504.

Wurst, as the moving party, met his initial burden of showing that no issue of material fact exists, *i.e.,* he demonstrated that the interior inspection of homes would only be done by consent. Holcomb, as the nonmoving party, did not set forth any specific facts to show that the reappraisal plan involved any constitutional violation. He simply reiterated the unsubstantiated allegations of his pleadings. The trial court properly granted summary judgment in favor of Wurst and ·Holcomb's second issue for review has no merit.

■ Holcomb's third issue for review reads as follows:

"3. Approval of the contract in question by the Ohio Tax Commissioner has no bearing whatsoever on the constitutional validity of the contract."

We do not dispute this contention. Certainly, the Tax Commissioner's approval could not validate the appraisal plan if it were unconstitutional. However, the plan involves no Fourth Amendment violation; thus this issue is not relevant. Therefore, we find no merit in this argument.

Holcomb's fourth issue for review reads as follows:

"4. The county prosecuting attorney has standing, under Ohio Revised Code § 309.12, to contest the constitutional validity of terms of a contract between a county auditor and his contractual agent made under the authority of Ohio Revised Code § 5713.01."

We considered this issue when we overruled Wurst's motion to dismiss. The fact that Holcomb has standing to bring this action does not relate to the issue of whether the trial court erred in granting summary judgment in favor of Wurst. Summary judgment was appropriate and this argument has no merit.

■ Holcomb's fifth issue for review reads as follows:

"5. The court of common pleas had jurisdiction to grant declaratory and other relief as to the contract in question."

In his motion to dismiss before the trial court, Wurst argued that the trial court lacked jurisdiction because Holcomb's complaint, which had requested a temporary restraining order, was not verified pursuant to Civ.R. 65(A). Holcomb now argues that this provision is not applicable because there were no *ex parte* proceedings. However, the trial court did not dismiss the complaint on this basis. Instead, it treated the motion to dismiss as a motion for summary judgment. Wurst did not raise the issue in his motion to dismiss before this court nor did he cross-appeal. Therefore, this issue is not properly before us and we decline to decide it.

For the reasons previously stated, we find that none of the issues which Holcomb presents has any merit. Consequently, his assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and YOUNG, JJ., concur.