CITY OF CLEVELAND, Appellee,

v.

BERGER, Appellant.

[Cite as *Cleveland v. Berger* (1993), 91 Ohio App.3d 102.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63089.

Decided Oct. 12, 1993.

*Danny R. Williams,* Director of Law, and *Martha R. McCorkle,* Assistant Director of Law, for appellee.

*Berger & Fertel* and *Robert M. Fertel,* for appellant.

PATRICIA A. BLACKMON, Judge.

This is an appeal from a judgment of the Housing Division of the Cleveland Municipal Court, assessing a fine to Sanford J. Berger, defendant-appellant, for

violations of C.C.O. 369.13 and 369.15. Berger challenges the judgment and assigns eight errors for our review.[1]

After a review of the record and the arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.

Berger owns an apartment building in Cleveland, Ohio. In 1983, Berger entered into a fifteen-year contract with the United States Department of Housing and Urban Development ("HUD") for participation in the Section 8 program which provides rental subsidies for selected tenants. To conduct its required interior and exterior building inspection, HUD appointed the Cuyahoga Metropolitan Housing Authority.

On June 18, 1991, a housing inspector arrived to inspect the building in response to an anonymous complaint. The exterior inspection revealed several maintenance violations. The building custodian escorted the inspector into the building and a resident allowed the inspector to examine her apartment.

The inspector notified Berger of the violations and gave him ten days to correct the problems. On July 23, 1991, a follow-up inspection revealed that the problems remained uncorrected. A ticket was issued listing violations of Cleveland Codified Ordinances 369.13 and 369.15.

On September 19, 1991, Berger filed unsuccessful motions for suppression of evidence and for dismissal of the complaint against him. He argued that the inspection constituted a warrantless search of his building and that C.C.O. 367.03 was unconstitutional since it allowed such searches. He also argued that, since his building was controlled by the federal government, the local housing code was preempted by federal law and the building was immune from inspection by city housing inspectors. He also argued that governmental immunity or governmental contractor immunity barred a trial.

Berger's motions were overruled by the trial court. After a hearing, Berger was found guilty of violating C.C.O. 369.13 and 369.15. He was fined $50 plus costs. Berger filed a notice of appeal and a motion to suspend execution of his sentence.

■ Berger argues that C.C.O. 367.03 and C.C.O. 367.99 are unconstitutional. C.C.O. 367.03 requires that housing inspectors may, at any reasonable time, enter any dwelling in the city of Cleveland in order to enforce the housing code. It also provides that no person shall prevent the inspector from entering the premises. C.C.O. 367.99 imposes fines for refusing to permit the housing inspector to enter the premises.

---

1. See Appendix.

Berger was not convicted of violating C.C.O. 367.03 or 367.99. We find, therefore, that he lacks standing to challenge the constitutionality of these statutes. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its allegedly unconstitutional provisions." *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 175, 512 N.E.2d 971, 977. C.C.O. 367.03 and 367.99 apply to the rights of a housing inspector to enter property for inspection and to the penalties for refusing entry. In the case *sub judice,* the housing inspector was allowed to enter. Berger was not charged with, or convicted of, violating C.C.O. 367.03 or 367.99. He was not within the class of persons with respect to whom the statutes are allegedly unconstitutional. See *Palazzi* at 174, 512 N.E.2d at 976–977. Berger's first assignment of error is without merit.

■ Berger also claims that the trial court erred in denying his motion to suppress evidence. He claims that the evidence of housing code violations was obtained through an illegal warrantless search of his property in violation of the Fourth Amendment. We disagree.

■ The Fourth Amendment protects against unreasonable searches and seizures. It does not protect against all searches. Generally, warrantless searches of homes are unreasonable. *Ridgeway v. Union Cty. Commrs.* (S.D.Ohio 1991), 775 F.Supp. 1105. The same protection extends to commercial buildings. *State v. Penn* (1991), 61 Ohio St.3d 720, 723, 576 N.E.2d 790, 792. An exception to the general rule prohibiting warrantless searches is a search by consent. *State ex rel. Holcomb v. Wurst* (1989), 63 Ohio App.3d 629, 579 N.E.2d 746, motion to certify overruled (1989), 47 Ohio St.3d 711, 548 N.E.2d 242.

We find that the inspector obtained valid consent for the search. Upon approaching the building, she identified herself as a city housing inspector and asked to see the custodian or other responsible person. Several people sitting on the steps of the building directed her to Charles Bridget. Bridget identified himself as the custodian. The inspector presented him with her identification and asked for permission to inspect the property. Bridget allowed the inspection.

■ Berger argues that Bridget was not employed as a custodian in the building and was not authorized to consent to the inspection. However, several residents of the building identified Bridget as the custodian. Bridget escorted the inspector into the common areas of the building. We find that, under the circumstances, the inspector was reasonable in her belief that Bridget had the authority to consent to the inspection. Consent to search is valid if it is obtained from a person with sufficient authority over the property to give his consent, or at least from a person reasonably believed to have such authority. *White*

*Fabricating Co. v. United States* (C.A.6, 1990), 903 F.2d 404. The inspector had a reasonable belief that Bridget was authorized to consent to the inspection; therefore, the search proceeded under valid consent. Finding no constitutional violation, we overrule Berger's second assignment of error.

■ Berger next argues that C.C.O. 367.04 denied him due process of law by improperly delegating the city's legislative authority to housing inspectors. He claims that it is improper to allow housing inspectors to decide the amount of time necessary to make repairs before criminal charges are filed against the property owner. We disagree.

The housing code covers many different structures within the city of Cleveland. Some code violations may be more extensive than others, requiring more time to complete repairs. The vast number of different violations necessitates that the time for repair be established on a case-by-case basis. Despite Berger's argument that this policy offers the potential for arbitrary and discriminatory treatment of property owners, he has presented us with absolutely no evidence that he was unfairly "targeted" by housing inspectors. The statute provides that a property owner may appeal a ticket within the time allowed for compliance. Although the owner must still appear at his arraignment, action to enforce the ticket is suspended during the pendency of the appeal. Berger had the right to appeal the ticket and could have delayed its enforcement by appealing it. We reject Berger's argument that the ordinance denies him his due process rights.

■ We also reject Berger's argument that he was improperly denied the opportunity to present evidence that the time allowed for him to make repairs was arbitrary and unreasonable. As discussed above, we find that the time for repairs is best decided on a case-by-case basis. The housing inspector testified that she based the repair time on the size of the building, the type of cited violations and the fact that there was a custodian on the property. She had more than ten years of experience as a housing inspector. We find nothing arbitrary about the inspector's actions. Berger's fourth assignment of error is without merit.

■ In his fifth assignment of error, Berger argues that the trial court erred in convicting him of charges that were not contained in the written warning notice issued by the housing inspector. He claims that criminally charging him with violations without prior notice denied him his due process rights. Our review of the record shows that Berger *was* notified of the violations he was convicted of. The warning notice issued to Berger included the following violations: rear porch fascia board deteriorated, rear porch system in need of paint, debris in rear stairwell of cellar, cellar retaining wall needs painting. The subsequent ticket listed the following: front and rear door locks are in need of repair in No. 9,

gutter and downspouts are leaking south side, exterior wood trim is in need of paint, fascia is deteriorated. Berger argues that, since only the deteriorated fascia was listed in both notices, the court erred in convicting him of other violations.

In support of his argument, Berger cites C.C.O. 367.04(a), which states:

"Whenever the Commissioner of Building and Housing shall find any dwelling structure or premises, or any part thereof, to be in violation of the provisions of this Housing Code, he shall give or cause to be given to the owner or agent or person in charge of such structure or premises, and the mortgagee of record, a written notice stating the violations therein. Such notice shall order the owner within a stated reasonable time to repair, improve, demolish or effectively board the structure or premises concerned."

C.C.O. 367.05 provides that, upon an owner's failure to make the necessary repairs, the Commissioner of Building and Housing may order the building vacated or may pursue legal action to compel the owner to make the repairs. The ordinance requires only one notice of violations. The ticket issued by the inspector on July 23, 1991 fully complied with C.C.O. 367.04(a).

We reject Berger's argument that he was denied due process. We find that he had ample notice of the violations on his property. The inspector testified that, prior to issuing the ticket, she issued Berger a warning notice and spoke with Berger by telephone about the violations. Berger was fully advised of his right to appeal the ticket before the time of his arraignment. See C.C.O. 367.09. The ticket was issued July 23, 1991. Berger was ordered to appear in court on August 30, 1991. Berger had ample time to make the necessary repairs and/or appeal the ticket before enforcement action began. We find that the notice provisions of C.C.O. 367.04(a) were fully complied with. Berger's fifth assignment of error is without merit.

Berger next argues that the complaint against him was barred by federal preemption and that the trial constituted an improper regulation of a federal statutory program. We disagree.

State law may be preempted by federal law when a federal statute includes language that explicitly provides for preemption of state law, when the wording or legislative history of the federal statute shows Congress's intent to exclusively regulate the area, or where the state law conflicts with the federal regulatory scheme. *Mowery v. Mercury Marine, Div. of Brunswick Corp.* (N.D.Ohio 1991), 773 F.Supp. 1012. Berger argues that the Supremacy Clause provides for the preemption of any law which conflicts with federal law. However, mere differences between federal and state law do not constitute a conflict sufficient to invoke preemption. It must be shown that compliance with both

federal and state regulations is impossible or that the state law stands to impair achievement of the purposes and goals of the federal statute. *Lever Bros. Co. v. Maurer* (S.D.Ohio 1989), 712 F.Supp. 645.

In the case *sub judice,* Berger has not shown that there is a conflict between state and federal law. We also find no evidence that the federal government explicitly preempted state law in the area of public housing or that Congress intended to exclusively regulate the area. Berger has not established the applicability of preemption in this case. We overrule his sixth assignment of error.

Berger also claims federal governmental immunity from prosecution. He claims that the operation of a Section 8 property made him a federal official and that, as such, he is immune from state regulation. There is no support for his argument that the contract made him a federal official. We disagree with the argument that Berger was performing a "uniquely federal interest" in operating his Section 8 property for the benefit of the tenants. Under the contract, Berger received rental subsidies for his Section 8 tenants. Berger clearly had a beneficial interest in the operation of the apartment building.

We also reject Berger's argument that the application of state law would disrupt the proper functioning of the federal Section 8 program. He has produced no evidence that the state housing code regulations are in conflict with federal legislation. As discussed above, differences in state and federal legislation do not indicate a conflict. We find no merit in Berger's seventh assignment of error.

Berger also argues that his conviction was against the manifest weight of the evidence. He claims that the court did not have enough evidence to convict him of violating C.C.O. 369.13. C.C.O. 369.13 provides:

"(a) All dwelling structures and all parts thereof, both exterior and interior, shall be maintained in good repair and shall be capable of performing the function for which such structure or part of any feature thereof was designed or intended to be used."

A judgment will be reversed as being against the manifest weight of the evidence only when a review of the evidence and all reasonable inferences determines that the trier of fact clearly lost its way and created a manifest miscarriage of justice sufficient to mandate the reversal of the conviction and the order of a new trial. See *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721. Berger argues that the fascia board was performing its function of holding up the gutters and that no violation was established. However, Berger ignores the language of the ordinance that

requires structures to be maintained in good repair. It is reasonable to require an owner to perform basic maintenance on his property to avoid more serious damage. The inspector testified that the fascia board was deteriorated. This was enough evidence to establish a failure to keep the premises in good repair, which is a violation of C.C.O. 369.13. We cannot say that the trier of fact lost its way and created a manifest miscarriage of justice. Berger's eighth assignment of error is without merit.

*Judgment affirmed.*

NAHRA, P.J., concurs.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I respectfully dissent from the majority's resolution of this case. Specifically, I disagree with the finding that appellant lacks standing to challenge the constitutionality of Cleveland Codified Ordinances 367.03 and 367.99. I would thus have sustained his first assignment of error.

In his first assignment of error, appellant asserts that C.C.O. 367.03 and the penalty which flows from a violation thereof violate the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution. He argues that the violation occurs because the building's tenants must agree to a warrantless inspection of the building or face criminal charges. Appellant cites the cases of *Wyman v. James* (1971), 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408; *Camara v. Municipal Court* (1967), 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 75 O.O.2d 190, 346 N.E.2d 666; and *State ex rel. Holcomb v. Wurst* (1989), 63 Ohio App.3d 629, 579 N.E.2d 746, in support of his position.

The city responds to appellant's argument by attacking his standing to challenge the constitutionality of the ordinance. It argues that since appellant was not "injured by some governmental action" resulting from the application of the ordinance and cited for any violation of it, this court is without jurisdiction to entertain appellant's first assignment of error. The majority accepts this argument.

Generally, a person has standing to challenge only the constitutionality of rules and regulations that affected his interest and those rules and regulations applied to him. *McNea v. Garey* (N.D.Ohio 1976), 434 F.Supp. 95, 103; see, also, *Akron Bd. of Edn. v. State Bd. of Edn. of Ohio* (C.A.6, 1974), 490 F.2d 1285, 1289; *State v. Brooks* (Jan. 10, 1991), Cuyahoga App. No. 57034, unreported, 1991 WL 1494. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to

have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512 N.E.2d 971, syllabus.

Contrary to the city's stance in the present case that we have no "logical reason" to consider appellant's constitutional argument, this court does have jurisdiction and a very important "logical reason" to consider it. Appellant was indeed within the class against whom the ordinance was applied, being the owner of a building in which a city housing inspector could enter without a warrant under C.C.O. 367.03. Moreover, the ordinance is the only authorization that a city housing inspector can rely on to make these inspections and specifically the only authorization by which Inspector Thomas could possibly enter appellant's property on June 18, 1991. Appellant thus is within the class against whom a criminal charge could be brought pursuant to C.C.O. 367.99 if he did not allow the inspector to enter the building without a warrant. Even though appellant was not charged criminally under that ordinance, the fact remains that C.C.O. 367.03 was enforced against him through the inspection of his building and the inspection resulted in a criminal complaint being issued against him for a violation of the city's housing code. He was thereby inevitably injured by the application of this allegedly unconstitutional provision.

The ordinances at issue provide in relevant part:

"367.03   Right of Entry

"Upon presentation of proper credentials the Commissioner of Housing and his duly authorized agents or inspectors may enter at reasonable times, or at such other times as may be necessary in an emergency, any dwelling, building, structure or premises in the City to perform any duty imposed on him by this Housing Code. No person shall in any way obstruct, hinder, delay or otherwise interfere with the housing inspector in such entrance."

"367.99   Penalty

"(a) * * * whoever refuses to permit entry by the Housing Inspector at a reasonable hour, and whoever interferes with, obstructs, hinders or delays such housing inspector while attempting to make such inspection shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) for the first offense, and for a second or subsequent offense shall be fined not less than one hundred dollars ($100.00), or imprisoned for not more than six months or both. A separate offense shall be deemed committed each day during or on which an offense occurs or continues."

Section 14, Article I of the Ohio Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated;

and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

The Fourth Amendment to the United States Constitution likewise protects a citizen's right to be free from all unreasonable searches. Whether the government's intrusion on an individual's property is motivated by criminal violations or by breaches of other statutory or regulatory standards, the individual's privacy interests still suffer. *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 312–313, 98 S.Ct. 1816, 1820–1821, 56 L.Ed.2d 305, 311–312; *Camara.* Warrantless searches of residences are thus considered "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585.

In *Camara*, a lessee refused to allow a warrantless inspection of his residence. He was arrested and charged with a violation of the San Francisco Housing Code, specifically:

"Authorized employees of the city departments or city agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the city to perform any duty imposed upon them by the Municipal Code." *Camara*, 387 U.S. at 526, 87 S.Ct. at 1730, 18 L.Ed.2d at 934.

The United States Supreme Court, concerned with the increasing use of housing and health inspections and in light of its endeavor to more clearly define Fourth Amendment protections, re-examined "whether administrative inspection programs, as presently authorized and conducted, violate Fourth Amendment rights as those rights are enforced against the States through the Fourteenth Amendment." *Id.*, 387 U.S. at 525, 87 S.Ct. at 1729, 18 L.Ed.2d at 933. Moreover, the review was prompted by marginal decisions in *Frank v. Maryland* (1959), 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877, and *Ohio ex rel. Eaton v. Price* (1960), 364 U.S. 263, 80 S.Ct. 1463, 4 L.Ed.2d 1708, wherein criminal convictions were affirmed based upon an individual's refusal to allow a warrantless entrance and inspection of his premises.

In *Frank*, a health inspector discovered evidence of a rat infestation in a private residence. He requested the owner's permission to inspect the basement of the house without having a warrant. The owner refused to cooperate and was later convicted for not allowing the inspection. The *Frank* court found the statute which punished this property owner for refusing to cooperate with a warrantless inspection to be constitutional.

The *Frank* decision was thereafter generally interpreted and cited as carving out an additional exception to the warrant requirement. This exception was applied even though *Frank* was distinguishable based upon language in the ordinance at issue that required "inspection for cause."

The *Frank* majority came to its conclusion by characterizing municipal fire, health and housing inspection programs as touching upon only "the periphery of the important interests safeguarded by the Fourteenth Amendment's protection against official intrusion * * *." *Frank*, 359 U.S. at 367, 79 S.Ct. at 809, 3 L.Ed.2d at 882. The programs touch only upon constitutional guarantees because they are regulatory in nature and are not meant to secure evidence of criminal activity. Therefore, "historic interests of 'self-protection' jointly protected by the Fourth and Fifth Amendments are said not to be involved, but only the less intense 'right to be secure from intrusion into personal privacy.'" *Camara*, 387 U.S. at 530, 87 S.Ct. at 1731, 18 L.Ed.2d at 936.

The *Camara* court recognized, in reviewing *Frank*, that these types of inspection programs were less hostile than "criminal" searches. It nonetheless found the *Frank* majority's characterization of the housing inspections as less deserving of Fourth Amendment protection to be abnormal because the codes are enforced through criminal processes, including the issuance of a criminal complaint and, as in the present case, criminal penalties for a refusal to permit the inspection. *Id.*, 387 U.S. at 530, 87 S.Ct. at 1732, 18 L.Ed.2d at 936.

The *Camara* court further discredited the remaining justifications, suggested by the *Frank* majority, for allowing warrantless inspections: (1) the inspections are minimally demanding as they require a certain amount of reasonableness; and (2) the warrant requirement would not be effective under these circumstances because it would lead to "rubber stamping" of warrants. These justifications undercut the purpose behind the Fourth Amendment warrant requirement. The court explained:

" * * * Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. These are questions which may be reviewed by a neutral magistrate without any reassessment of the basic agency decision to canvass an area. Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search. And even if the occupant possesses sufficient fortitude to take this risk, as appellant did here, he may never learn any more about the reason for the inspection than that the law generally allows housing inspectors to gain entry. The practical effect of this system is to leave the occupant subject to the

discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search. * * * We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty." *Id.,* 387 U.S. at 532–533, 87 S.Ct. at 1732–1733, 18 L.Ed.2d at 937–938.

Finally, the court discounted the justification that public welfare commands that the inspections not be subjected to a warrant requirement. After all, a warrant requirement does not destroy a municipality's right to inspect pursuant to its fire, health and housing standards. It merely sets forth confines of reasonableness without frustrating the government's purpose in conducting the search. *Id.,* 387 U.S. at 533, 87 S.Ct. at 1733, 18 L.Ed.2d at 938.

In applying these concepts to the facts before it, the *Camara* court, in overruling *Frank,* held that:

"In summary, we hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the reasons put forth in *Frank v. State of Maryland* and in other cases for upholding these warrantless searches are insufficient to justify so substantial a weakening of the Fourth Amendment's protections." *Id.,* 387 U.S. at 534, 87 S.Ct. at 1733, 18 L.Ed.2d at 938.

The court adopted the following language from *Johnson v. United States* (1948), 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440, with regard to its holding:

" 'The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, *as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.' "* (Emphasis added.)

However, a concept which constitutionally attaches to the warrant requirement is probable cause. The *Camara* court, therefore, continued its analysis to determine whether probable cause is a necessary predicate to inspections of this type.

The court initially discussed the purpose behind the programs, *i.e.,* obtaining compliance with minimal regulatory standards to safeguard the public from health and safety hazards. In determining whether there is probable cause to

issue a warrant for an inspection and thereby determining its reasonableness, "the need for the inspection must be weighed in terms of these reasonable goals of code enforcement." *Camara,* 387 U.S. at 535, 87 S.Ct. at 1734, 18 L.Ed.2d at 939.

It was then clearly recognized that the only means to secure compliance with minimum regulatory standards of a municipality is through routine periodic inspections. Such periodic inspections were deemed reasonable as a result of long-term judicial and public acceptance and because not only are they a limited invasion of a citizen's privacy, they are the only means to adequately achieve compliance. *Id.*

The linchpin for determining whether probable cause exists to inspect a premises is not the inspector's belief that a certain dwelling is in violation of the code, but the reasonableness of the appraisal of the conditions of the area to be searched as a whole. If a reasonable belief exists that a condition is present or could develop which would threaten the safety of the public, probable cause is demonstrated to inspect a certain dwelling even though there is no particular cause to search that dwelling. Thus, the court stated that probable cause can be based, *e.g.,* upon the passage of time, the type of building, or the condition of the general neighborhood. *Id.,* 387 U.S. at 538, 87 S.Ct. at 1735–1736, 18 L.Ed.2d at 941.

This is the point at which it becomes apparent that the level of probable cause required for one of these inspections is less than that required for searches conducted in the normal criminal context. For the latter, the items to be recovered need to be specified as well as their location. The *Camara* court thus relaxed the standard of probable cause required for warrants in the routine administrative search arena.

Whether the relaxed standard applies to searches which are induced by citizen complaints is questionable, considering that the *Camara* court focused on the necessity of periodic and routine inspections in formulating the standard. See Note, Administrative Search Warrants (1974), 58 Minn.L.Rev. 607, 655. The court accepted the diluted probable cause equation for periodic inspections because it guards against singling out a particular dwelling rather than conducting areawide searches. Therefore, conducting searches premised upon anonymous tips, without using the traditional probable cause analysis, may produce "the danger that local officials might harass unpopular individuals." *Id.* at 639.

The *Camara* court moreover recognized two traditional exceptions when search warrants were not required for periodic and area inspections. First, the holding in *Camara* was not "intended to foreclose prompt inspection even without a warrant, * * * in emergency situations." Second, since most citizens would allow inspections of their property without a warrant, the court suspected that a

majority of inspections would occur by consent. Moreover, these "consent inspections" were apparently given select status. After all, "as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused * * *." *Camara*, 387 U.S. at 539–540, 87 S.Ct. at 1736, 18 L.Ed.2d at 941.

Although the *Camara* court recognized that consent could justify a warrantless inspection, it failed to provide any guidelines to be followed in determining valid consent. An issue that naturally arises, therefore, is whether, considering the court's relaxation of the standard for probable cause for an administrative search, did it likewise alter the standard for reviewing consent. However, one need not address this issue in Ohio.

The *Camara* decision's contribution to a municipality's inspection programs, *i.e.*, consent searches, was taken away by the Supreme Court of Ohio in *Wilson*. In *Wilson*, the city of Cincinnati enacted two ordinances which modified and amended its building code. The ordinances required a homeowner to tender to a prospective buyer a certificate of housing inspection prior to entering into a sales contract. The homeowner-seller, however, could obtain the certificate only by permitting an inspector to enter his property at an agreed-to time. The failure to obtain the certificate subjected the seller to criminal penalty. *Wilson*, 46 Ohio St.2d at 139–140, 75 O.O.2d at 191–192, 346 N.E.2d at 667–668.

The Supreme Court of Ohio, in reviewing the appellant's claim that the ordinances were an unconstitutional exercise of police power, first noted that "the seller is faced with a serious dilemma" in that he must either consent to a warrantless search or face the possibility of a criminal penalty. *Id.* at 143, 75 O.O.2d at 194, 346 N.E.2d at 670. It then noted, however, that "a valid consent involves a waiver of constitutional rights and cannot be lightly inferred; hence, it must be 'voluntary and uncoerced, either physically or psychologically.'" *Wilson*, 46 Ohio St.2d at 143–144, 75 O.O.2d at 194, 346 N.E.2d at 670, citing *United States v. Fike* (C.A.5, 1972), 449 F.2d 191, 193; *Phelper v. Decker* (C.A.5, 1968), 401 F.2d 232; *Cipres v. United States* (C.A.9, 1965), 343 F.2d 95. Based upon these principles, the court concluded that the coercion which flows from the sole alternative of criminal penalty "negates any 'consent' which may be inferred from the allowance of the inspection and, therefore, the validity of such searches upon the basis of consent is not sustainable." *Id.*, 46 Ohio St.2d at 144, 75 O.O.2d at 194, 346 N.E.2d at 670.

The *Wilson* court reached this decision without reference to *Camara's* "consent" language, thereby completely ignoring the latter's recognition of the consent exception.

Ironically, the court then cited *Camara* thereafter as *further* support for its holding which states:

" * * * where a municipal ordinance requires the owner of real property to tender a certificate of housing inspection to a prospective buyer, and such certificate may be obtained only by allowing a warrantless inspection of the property, the imposition of a criminal penalty upon the owner's failure to tender the certificate violates the owner's rights under the Fourth Amendment to the United States Constitution." *Wilson,* 46 Ohio St.2d at 145, 75 O.O.2d at 194–195, 346 N.E.2d at 671.

To allow the ordinance to stand would place an individual in a position not tolerated by the *Camara* court, being that the individual must agree to a warrantless inspection or face criminal penalty. *Id.*

The *Wilson* court thus adopted that portion of *Camara* which signifies that the Fourth Amendment prohibits the prosecution of a person who refuses to permit a warrantless code-enforced inspection of his personal residence. See, also, *United States v. Biswell* (1972), 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (warrantless search of a locked firearms storeroom during business hours did not violate Fourth Amendment when authorized by Gun Control Act of 1968); *See v. Seattle* (1967), 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (where the *Camara* personal residence warrant requirement under the Fourth Amendment was extended to inspections of private commercial premises). It remains clear, therefore, that the *Wilson* court would have found the search which occurred therein to be unreasonable based upon lack of consent even without *Camara's* review of administrative searches.

This court's analysis must, therefore, necessarily cease here without further review with regard to consent. C.C.O. 367.03 places a citizen in a dilemma by offering only two choices, either agreement to the search or criminal penalty. The majority's venture into the "consent" arena and how it relates to the ordinance opposes *Wilson's* mandate that "consent" is not a viable justification of an administrative search when a criminal penalty is the only alternative to agreeing to the search.

The language of C.C.O. 367.03 nearly mimics the language of the San Francisco ordinance in *Camara.* As already stated, warrantless searches of residences are presumptively in violation of the Fourth Amendment. C.C.O. 367.03 transposes this concept by making warrantless searches the rule and searches justified by warrants the exception. Thomas herself testified that "the only time that I, as an inspector, would obtain a warrant is if we were not permitted entry." Albeit the enactment of housing codes and their enforcement are generally valid exercises of the powers of local self-government, they cannot be exercised by steamrolling an individual's protected constitutional right to be free from unlawful searches.

I thus allude to Justice Celebrezze's concurring opinion in *Wilson*, where he stated:

"Insertion of a clause within the ordinance at issue herein requiring the officials charged with conducting the housing inspections pursuant to the aforesaid ordinance to obtain a search warrant whenever a homeowner refuses to permit a warrantless inspection of his premises, after advising such person that he or she had a constitutional right to refuse entry of the officials without a warrant, would save the constitutionality of the criminal penalties provided in the ordinance for the refusal of a homeowner to permit inspection of his premises." *Wilson*, 46 Ohio St.2d at 147, 75 O.O.2d at 195–196, 346 N.E.2d at 672.

The ordinance in the present case does not contain such a requirement. Hence, I find that C.C.O. 367.03 and 367.99, authorizing the imposition of criminal penalties against a property owner who refuses to permit a warrantless search by a housing inspector, are in violation of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. *Camara; Wilson.*

It is true that in *State ex rel. Holcomb*, the Butler County Court of Appeals held that a county auditor's plan for interior inspection of homes to reappraise property values for taxation purposes was constitutional. *State ex rel. Holcomb*, 63 Ohio App.3d at 636, 579 N.E.2d at 751. It was initially noted that administrative searches are intrusions upon Fourth Amendment interests but that consent searches are a recognized exception to the warrant requirement. *Id.* at 633, 579 N.E.2d at 749, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *Camara.* The court, however, clarified that its decision to find the plan constitutional was based on the many features of the plan that indicated that consent would be voluntary. Specifically, the plan provided for (1) consent to be requested at the person's home; (2) all individuals to be giving consent to be adult property owners; (3) daylight inspections; (4) data collectors not to be in uniform, armed or wearing badges; (5) possession of standardized identification cards; (6) data collectors not to have any discretion; rather homeowners were to be given an opportunity to have interior inspections; and (7) "*[f]inally, and most importantly, the inspections are for administrative, not criminal purposes. There is no penalty for refusing to consent and no criminal consequence involved in consenting to an inspection.*" (Emphasis added.) *Id.* at 635, 579 N.E.2d at 750. The plan found to be constitutional in *State ex rel. Holcomb* is an entirely different creature than the ordinance at issue in the present case based upon these factors alone.

Accordingly, I dissent.

120

## ASSIGNMENTS OF ERROR

I. C.C.O. 367.03 of the Cleveland Housing Code, violates the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, inasmuch as it makes the exercise of a constitutional right a criminal offense.

II. The trial court erred in denying Berger's motion to suppress evidence, since all of the evidence presented against him was the direct result of warrantless searches of his property which violated the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 14 of the Ohio Constitution.

III. Berger was denied due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution, as C.C.O. 367.04 constitutes an improper delegation of the city's legislative authority to its housing inspectors.

IV. The trial court [erred] in not permitting Berger to present evidence that the time provided him by the city inspector to make the demanded repairs was arbitrary and unreasonable, so as to constitute a denial of federal constitutional due process.

V. The trial court erred in conducting a trial and convicting Berger on charges that were not contained in the written "warning notice," as required by C.C.O. 367.04(a), so that Berger was deprived of a federal constitutionally protected "liberty" interest without due process of law.

VI. The trial court erred in overruling Berger's motion to dismiss complaint, as its actions were barred by federal preemption, as the trial proceeding constituted an improper regulation of a federal statutory program, which is governed by federally established standards.

VII. The trial court's actions were barred under the doctrines of federal governmental official immunity and/or federal governmental contractor immunity.

VIII. Berger's conviction was against the manifest weight of the evidence concerning the only charge that was properly before the trial court for determination.