JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Denver Frank Barry appeals from his conviction after a jury trial of the misdemeanor offense of failing to replace his demolished garage with a building that is in accord with the applicable codes of plaintiff-appellee, The City of Mayfield Heights, Ohio. Appellant also appeals from the trial court's subsequent order of sentence upon him.
{¶ 2} Appellant asserts that his conviction results from improper instructions given to the jury, that his conviction is neither based upon sufficient evidence nor supported by the weight of the evidence, and, further, that the trial court failed to proceed with sentencing in a timely manner.
{¶ 3} Mindful of appellant's assertions, this court has reviewed the record, but finds none of appellant's assertions has merit. Appellant's conviction and sentence, therefore, are affirmed.
{¶ 4} Appellant's conviction stems from his 1996 purchase of a home located at 1546 S.O.M. Center Road in appellee city. The home required some repairs and improvements which appellant agreed to undertake as a part of the purchase agreement. Among other things, appellant agreed to raze the existing garage and to replace it with an appropriate structure.
{¶ 5} The existing garage was a barn-like building situated at the rear of the property at the end of the side gravel driveway. It had been condemned as unsafe. Appellant demolished it soon after taking possession of the premises.
{¶ 6} In August 1996, appellant submitted an application to appellee's Building Department seeking a permit to replace the garage. The application was accompanied by two sets of site drawings for the proposed structure. Appellant's proposal indicated the structure would be located behind the house rather than where the original garage had been.
{¶ 7} Anne Weiland, the department secretary, obtained appellant's signature on the application, accepted the documents, stamped them as "received" by the Building Department on August 7, 1996, then passed them on to her supervisor, Building Commissioner Sheldon Socoloff. Socoloff's subsequent review of the documents, however, revealed some details of the proposed structure did not conform to city building requirements.
{¶ 8} Rather than simply rejecting the proposal, Socoloff made notes on the documents to reflect the changes that would be necessary. He then stamped the copies with his official seal. The seal indicated appellant's proposed plans had been "approved as noted" on "8/12/96." Another stamp in red ink indicated that "{t}he structural elements of the drawings ha[d] not been checked [;][t]he sufficiency of the 
elements to meet all Code Requirements is the responsibility of the author of the drawings." Socoloff noted for appellant three pages of additional requirements for the plans. In pertinent part, the garage had to be shingled "to match house," the elevation of the building from base to the peak of the roof had to measure thirteen feet in order to be in proper proportion to the size of the overhead door, the frame of the building housing the overhead door would have to have "2-2X12w/1/4" steel plate" reinforcement, and a concrete apron had to extend from the building's floor to the driveway.
{¶ 9} Appellant's permit to build the garage pursuant to Socoloff's noted specifications was issued to him on August 13, 1996. Pursuant to city protocol, appellant received a set of the specifications and the Building Department retained a set for its records.
{¶ 10} Appellant still had not replaced the garage, however, by the spring of 1998. As a result, appellee issued a citation against him for violation of Mayfield Heights Codified Ordinance ("MHCO") 1159.12.[1]
Appellant eventually entered a plea of guilty to this offense.
{¶ 11} Appellant agreed to construct the garage upon receiving some of the escrow funds remaining from his purchase of the property. The record reflects appellant obtained the funds in the summer of 1999.
{¶ 12} By that time, appellant's building permit for the replacement garage had expired. Appellant applied for a new permit on September 7, 1999. Weiland placed a notation on appellant's application that since appellant's permit "issued 8/13/96 had expired [,] a new permit was issued on the same drawings." Weiland further noted that appellant had been "informed that the [garage's] downspouts must be connected to a [storm] sewer. He changed this application accordingly." Appellant's application reflected this alteration. With an asterisk, Weiland indicated Socoloff had approved the application on the understanding appellant would "use [the] same drawings." Appellant's building permit was issued the same day.
{¶ 13} Appellant proceeded to build the new garage on his property. On January 12, 2000 appellee's "building housing inspector" Donna Covey and Socoloff appeared at appellant's house to view the garage as "part of a court ordered inspection." Covey took photographs of the building upon noticing that inter alia it lacked gutters, a steel plate above the overhead door, and a concrete apron.
{¶ 14} On January 18, 2000 appellee sent appellant a formal notice of violation with regard to the garage. The notice indicated the changes appellant needed to make to the building in order to comply with the applicable requirements. The notice also informed appellant that the plans appellant had submitted, "and which were approved as noted, clearly stated these requirements." Appellant was granted until May 14, 2000 to correct the conditions and to "schedule and cause the final inspection." He was advised to contact the building department to schedule the inspection. Appellant failed to do so.
{¶ 15} On May 15, 2000 Covey issued a citation to appellant for violation of MHCO 1383.085, failure to replace necessary structures.[2]
Appellant entered a plea of not guilty to the charge. On May 30, 2000 the trial court issued an order noting an inspection of appellant's garage was to "occur now;" however, the record reflects appellant refused to allow Covey onto his property.
{¶ 16} After several pretrial hearings were conducted, appellant's case proceeded to a jury trial on April 25, 2001. Appellee presented the testimony of Covey, Weiland and Socoloff and also introduced numerous exhibits into evidence, including Covey's photographs of appellant's new garage taken in January, 2000.
{¶ 17} After the trial court overruled his motion for acquittal, appellant testified in his own behalf. Appellant stated he had submitted different plans with his 1999 application for a building permit. Although he asserted the different plans had been approved as the 1996 plans had been, he could not provide a reason for the lack of any of appellee's stamps on his documents that would verify his assertion.
{¶ 18} Appellant also presented the testimony of a structural engineer consultant and the chief building official of the city of Bedford Heights. These witnesses essentially indicated appellant's new garage was structurally acceptable pursuant to ordinary building code standards.
{¶ 19} The jury ultimately found appellant guilty of the offense. On May 29, 2001 the trial court denied appellant's subsequent motion for a new trial. On July 27, 2001 the trial court notified appellant it had set his sentencing hearing for August 9, 2001.
{¶ 20} Thereafter, appellant's sentencing hearing apparently was continued for reasons not appearing on the docket, since the record reflects on August 20, 2001 the trial court issued an order resetting appellant's sentencing hearing for September 13, 2001. On August 24, 2001 appellant filed a request for a continuance of the September date set for the sentencing hearing; appellant's counsel informed the trial court he would be "out of the country upon that date." Before the trial court could respond to the request, however, on August 29, 2001, appellant filed a motion to dismiss his case "due to undue delay in sentencing." The record reflects the trial court denied appellant's motion, and his case ultimately proceeded to sentencing on October 25, 2001.
{¶ 21} The trial court imposed a fine of $1000, but suspended $500 of it. The trial court also ordered appellant to serve 180 days in jail, but the term was suspended and appellant was placed on probation "provided [he] continu[ed] compliance with the ordinance."[3]
{¶ 22} Appellant has filed a timely appeal and presents three assignments of error for review. His first states:
 {¶ 23} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GIVING JURY INSTRUCTIONS OVER OBJECTION.
{¶ 24} Appellant argues that references in the trial court's instructions to the jury to two ordinances other than the one he was charged with violating tainted the fairness of his trial.
{¶ 25} In particular, appellant challenges the jury instructions that set forth the requirements both that "parking areas and driveways" be surfaced with "asphalt or concrete," and also that appellee's building inspectors "make or cause to be made inspections" of structures to ensure compliance with applicable building codes.
{¶ 26} This court is mindful that in reviewing jury instructions, each is viewed in the context of the entire charge rather than in artificial isolation. State v. Price (1979), 60 Ohio St.2d 136. Moreover, no error occurs if the law is "clearly and fairly expressed to the jury so that they (sic) are able to understand it as it applies to the facts in the case at hand." Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7.
{¶ 27} MHCO 1383.085 required appellant to replace his garage with a structure "in accordance with all applicable" building codes. The permit issued to him by appellee on September 7, 1999 indicated he was to use the "same drawings" as approved by Socoloff in 1996. The 1996 drawings, in turn, bear Socoloff's notation that appellant's garage needed a concrete apron. Since appellant accepted his 1999 building permit without protest, he accepted it subject to that requirement. Consequently, the trial court correctly instructed the jury regarding appellee's stricture that "parking areas" have a particular type of surface.
{¶ 28} Similarly, the evidence demonstrated appellant had been notified in January 2000 that in order to avoid being cited for an improperly-built structure, two conditions would have to be met. Appellant not only would have to alter the current structure, but he also would have to allow appellee's representatives to view those alterations to ensure the building's compliance with the permit issued to him. Appellee's representatives' authority to ensure compliance thus was germane to the question of appellant's guilt of the offense.
{¶ 29} Under these circumstances, the trial court's instructions to the jury were proper.
{¶ 30} Appellant's first assignment of error, accordingly, is overruled.
{¶ 31} Appellant's second assignment of error states:
 {¶ 32} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 33} Appellant argues his conviction is neither based upon sufficient evidence nor sustained by the weight of the evidence. He therefore asserts the trial court improperly overruled his motions for acquittal and his conviction should be reversed. This court disagrees.
{¶ 34} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the offense has been proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421; State v.Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
{¶ 35} With regard to an appellate court's function in reviewing the weight of the evidence, the Ohio Supreme Court has set forth the following as the relevant analysis:
 {¶ 36} * * * Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. (Citation omitted.) * * *
 {¶ 37} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982)], 457 U.S. [31], at 42, 102 S.Ct. [2211] at 2218, 72 L.E.2d [652] at 661. See, also, State v Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibiity of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")
State v. Thompkins (1997), 78 Ohio St.3d 380 at 387.
{¶ 38} Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 39} Viewing the evidence in a light most favorable to appellee, the trial court properly overruled appellant's motions for acquittal. The garage he built differed significantly from the 1996 plans approved by Sokoloff; indeed, the structure appellant erected appeared less like a garage than a large "shed."
{¶ 40} Moreover, appellant's testimony seemed incredible in many respects. Appellant admitted he was an experienced contractor and home remodeler who was aware of the relevant procedures necessary in obtaining building permits. Nevertheless, he could not explain the reason his 1999 set of plans lacked appellee's approval stamp, he could not determine whether the signature on the 1999 permit application was his, and he claimed he did not speak with Weiland in September 1999 but rather some female clerk he neither recognized nor could describe for the jury.
{¶ 41} A review of the record, therefore, demonstrates both that the trial court acted properly in overruling appellant's motions for acquittal and that appellant's conviction is supported by the weight of the evidence. Cleveland v. Berger (1993), 91 Ohio App.3d 102.
{¶ 42} Accordingly, appellant's second assignment of error also is overruled.
{¶ 43} Appellant's third assignment of error states:
 {¶ 44} THE TRIAL COURT ERRED IN DULY (SIC) DELAYING SENTENCING AND DENYING APPELLANT'S MOTION TO DISMISS BY REASON OF SUCH DELAY.
{¶ 45} Appellant argues the length of time that extended between his conviction and his ultimate sentencing severed the trial court's jurisdiction over him. Appellant's argument is unpersuasive.
{¶ 46} The record reflects appellant did not raise this issue until he already had filed a motion for continuance of his sentencing hearing. Under these circumstances, appellant invited the claim of error he now seeks to raise on appeal and thus may not obtain benefit from it.State v. Woodruff (1983), 10 Ohio App.3d 326, headnote 3; see also HalArtz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus.
{¶ 47} Appellant's third assignment of error, therefore, is overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. and JAMES J. SWEENEY, J. CONCUR
[1] Failure to construct a garage after written notice issued.
[2] That code section provides in pertinent part:
1383.085 REPLACEMENT OF NECESSARY STRUCTURES.
If any structure or part thereof, or a secondary or appurtentant structure, is demolished in accordance with the provisions of this chapter, and such structure or part thereof, or secondary or appurtenant structure, is a required structure pursuant to the Zoning Code of the City, then such structure or part thereof, or secondary or appurtenant structure, shall be replaced in accordance with all applicable building and housing codes within two years after the demolition thereof is completed. Should the owner, agent, operator or occupant desire an extension of time in which to replace the demolished structure, the owner, agent, operator or occupant shall submit a written request for a review by the Director of Buildings. The Director of Buildings is authorized to extend the two-year time period for replacement of any demolished structure for one twelve-month period upon receipt of a written request for extension and review. * * *
[3] Execution of appellant's sentence has been stayed by the trial court pending the outcome of this appeal.