OPINION
{¶ 1} Defendant-appellant, Michael B. Whitfield ("Whitfield"), appeals the September 13, 2004 judgment of the Common Pleas Court of Allen County, Ohio, sentencing him to ten years in prison for each of the five counts on which he was convicted with the sentences to run consecutively for a total of fifty years imprisonment. The five counts included four counts of rape, in violation of R.C. 2907.02(A)(2), and one count of aggravated burglary, in violation of R.C. 2911.11(A)(1).
 {¶ 2} In 2002, Whitfield was a suspect in a rape investigation being conducted by Detective Phil Kleman ("Kleman") of the Lima Police Department regarding a rape which occurred in 2001. Kleman made contact with Whitfield on January 31, 2002 and asked him to come to the police station and allow the police to take a saliva sample for DNA testing. Whitfield agreed to give a saliva sample and Kleman transported him to the police station, where the saliva was extracted. Whitfield was not placed under arrest. After the sample was taken, Kleman drove Whitfield back home.
 {¶ 3} On February 6, 2002 Kleman again contacted Whitfield and told him that they needed another saliva sample for DNA testing. Whitfield transported himself to the police station, gave another sample and left.
 {¶ 4} On October 22, 2003 at approximately 1:45 a.m., Trista B. ("Trista") and her son Tim were watching a movie, seated on the couch together in Trista's apartment on 1855 North Cole Street in Lima, Ohio. Tim told Trista that there was a monster in the hallway and when she looked up she saw a man with a blackhooded sweatshirt, work gloves and a knife. The man came over to the couch, placed his knee into Trista's stomach and put the knife to her throat. He ordered her to shut up and tell her son that he was a friend. Trista was forced into her back bedroom where the unknown man pushed her onto the bed and removed her pants. He then used the knife and cut away her underwear and pushed her bra and shirt over her head. The man then inserted his fingers into her vagina and kissed and fondled her breasts.
 {¶ 5} The man then flipped Trista onto her face and anally penetrated her with his penis for several minutes. After the man withdrew from anal penetration, he forced Trista to perform oral sex on him. Next, the man forced Trista onto the bed and had vaginal intercourse with her. When the unknown man left, she locked the door and called 911. Trista was unable to identify the man in any detail to the police officers. She was then transported to the hospital where a "rape kit" was employed to collect physical evidence.
 {¶ 6} On October 28, 2004 in the same apartment complex, but in a different apartment, Stephanie S. ("Stephanie") was sitting at a table writing a letter. Her son was asleep in another room of the apartment when she heard a knock at the door and went to answer it. She looked through the peek hole but she was unable to identify the individual because her porch light was out. She asked who was there and the man replied that was it "Burt." Stephanie opened the door and a man pushed himself into her apartment, grabbed her and forced her at knifepoint to her bedroom. The man then anally penetrated Stephanie, fondled her vagina and then forced his penis into her mouth for oral sex. He penetrated her again anally and then left the apartment. Stephanie then called 911 and was transported to the hospital for evidence collection and an examination. As with Trista, Stephanie could only give a vague description of her attacker as a black male with a black-hooded sweatshirt, work gloves and a knife.
 {¶ 7} The sample from each rape kit was sent to the Ohio Bureau of Criminal Identification and approximately one to two months later, the Lima Police Department was notified of a match of these samples with a sample on file for the Defendant, Michael B. Whitfield. Whitfield was arrested and a search of his apartment yielded two black-hooded sweatshirts and work gloves matching the description of the article worn by the attackers. Whitfield lived in the same apartment complex as both victims.
 {¶ 8} On December 18, 2003 the Allen County grand jury returned a seven count indictment charging Whitfield with two counts of Aggravated Burglary, a felony of the first degree in violation of R.C. 2911.11(A)(1), and five counts of Rape, a felony of the first degree in violation of R.C. 2907.02(A)(2). On December 19, 2003, Whitfield was arraigned and pleas of not guilty were entered.
 {¶ 9} On June 3, 2003 Whitfield filed a motion to suppress the prior sample of his DNA collected by police in February of 2002 that had proven a match for DNA collected in the rape test kit examination done in this case following the rapes of two female victims in October of 2003. The DNA swab collected in February of 2002 was pursuant to an investigation of a rape that had occurred in December of 2001. While that earlier investigation did not lead to the arrest of Whitfield for the 2001 rape, Whitfield's DNA sample had been retained by the state following testing in the earlier case, and the 2002 DNA sample was then subsequently determined to match the suspect's DNA in the rapes at issue in this case.
 {¶ 10} On June 14, 2004 an evidentiary hearing was held on defendant's motion to suppress. That same date, the trial court filed a judgment entry overruling defendant's motion to suppress. On June 15, 2004 a jury trial commenced with the case. On June 17, 2004 the jury returned a verdict finding Whitfield guilty of four counts of Rape and one count of Aggravated Burglary. The trial court then ordered a presentence investigation and sex offender evaluation.
 {¶ 11} On September 13, 2004 a sentencing hearing was held and Whitfield was sentenced to a prison term of ten years on each of the five counts of which defendant was convicted. The trial court ordered that the prison terms imposed on all counts were to be served consecutively.
 {¶ 12} On October 8, 2004 the defendant-appellant, filed a notice of appeal raising the following assignment of error:
The Trial Court below committed error prejudicial to the Defendant inthis case by not suppressing the DNA evidence that was collected and heldby the State of Ohio in connection with another case where the sample wasgiven voluntarily by the Defendant for that other case andinvestigation.
 {¶ 13} When ruling on a motion to suppress evidence, a trial court must make both factual and legal findings. See State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, 2002 WL 389055, unreported, at *1. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. State v. Johnson (2000), 137 Ohio App.3d 847, 850. Thus, the trial court must evaluate the evidence, judge the credibility of the witnesses, and resolve the factual issues before the trial court. Statev. Mills (1992), 62 Ohio St.3d 357, 366; State v. Clay (1973),34 Ohio St.2d 250; State v. Clelland (1992), 83 Ohio App.3d 474, 480;State v. Curry (1994), 95 Ohio App.3d 93, 96. An appellate court must uphold the trial court's factual findings if they are supported by competent, credible evidence. State v. Dunlap (1995), 73 Ohio St.3d 308,314; State v. Williams (1993), 86 Ohio App.3d 37, 41. However, the appellate court "must then conduct a de novo review of the trial court's application of the law to the facts." State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053, at ¶ 9.
 {¶ 14} The issue of consent may be considered as having two parts: (1) the consent to obtain the evidence and (2) the consent to use the evidence. In the case at hand, Whitfield claims that the retention and use of his DNA by law enforcement from an entirely different crime is a violation of his constitutional rights. Whitfield argues that the Court erred in not suppressing the saliva/DNA evidence seized in 2002 for the reason that it was obtained in violation of his constitutional rights. According to Whitfield, he was prejudiced by the erroneous admission of the DNA evidence, the only evidence linking him to the crimes. Therefore, Whitfield's assignment of error is only questioning the issue of the consent to use the DNA evidence that was seized in 2002 from Whitfield.
 {¶ 15} As to the issue of consent to use, we find that Whitfield has offered no authority to support his argument that the state must obtain his specific consent each time it plans to use DNA evidence obtained in preceding cases. However, we find that the trial court has accurately set forth the standards for evaluating the voluntariness of Whitfield's original consent.
 {¶ 16} Under the Fourth and Fourteenth Amendments to the United States Constitution it is well settled that searches and seizures for evidence that are conducted outside the judicial process "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States
(1967), 389 U.S. 347, 357. This rule applies under Ohio law as well, because the language of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution are coextensive and provide the same protections. State v. Robinette (1997),80 Ohio St.3d 234, 238-39.
 {¶ 17} However, there is a specific exception to the requirements of both a warrant and probable cause — a person waives Fourth Amendment protection by consenting to a warrantless search. Schneckloth (1973),412 U.S. 218, 219; Davis v. United States, 328 U.S. 582, 593 — 94; Stateex rel. Holcomb v. Wurst (1989), 63 Ohio App.3d 629, 635. "TheFourth Amendment test for a valid consent to search is that the consent be voluntary, and `[v]oluntariness is a question of fact to be determined from all the circumstances.'" Ohio v. Robinette (1996), 519 U.S. 33, 40, citing Schneckloth, 412 U.S. at 248-49. The burden is on the prosecution to demonstrate consent, and that burden "is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer
(1983), 460 U.S. 491, 497.
 {¶ 18} In order to fulfill its burden, the state has to prove by clear and convincing evidence that the consent was freely and voluntarily given. State v. Jackson (1996), 110 Ohio App.3d 137, 142, citingSchneckloth, 412 U.S. at 248 — 49. Clear and convincing evidence is evidence "which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122, quoting Cross v. Ledford (1954), 161 Ohio St. 469. A warrantless search based upon a suspect's consent while not in custody is valid if the "consent was in fact voluntarily given, and not the result of duress or coercion, express or implied" under the totality of the circumstances. Schneckloth, 412 U.S. at 248.
 {¶ 19} The trial court found in the present case that Whitfield's consent to give saliva samples in February 2002 was voluntary and not the result of duress or coercion. In evaluating the totality of the circumstances under the objective reasonable person standard, the trial court found Whitfield had, in the past, been arrested, handcuffed, and taken into custody, so the encounter with Officer Kleman was not a first-time experience for Whitfield. He was asked to go to the police station and submit a saliva sample which he did by riding down to the police station, unhandcuffed in the front seat of Kleman's vehicle. In addition, a few days later, Kleman called Whitfield requesting another sample and Whitfield drove to the police station himself and provided another sample.
 {¶ 20} Under the totality of the circumstances, the trial court determined that Whitfield voluntarily consented to his saliva sample being seized; thus he cannot object to its seizure. As stated by the trial court:
Saliva is no different than any other lawfully seized property. It iswell established that an individual lacks standing to object to theseizure of voluntarily abandoned property. Abel v. United States (1960),362 U.S. 217, 241; State v. Freeman (1980), 64 Ohio St.2d 291, 296-97.Once property has been voluntarily abandoned, a defendant must provefacts sufficient to establish his legitimate expectation of privacy inthe item searched. United States v. Salvucci (1980), 448 U.S. 83, 93.{¶ 21} Whitfield failed to establish any legitimate expectation of privacy in the item searched, here the results of DNA tests conducted on his saliva, which he voluntarily permitted to be removed from his person. See State v. Quinones (Feb. 14, 1996), Lorain App. No. 95CA006084, unreported.
 {¶ 22} The trial court reviewed the totality of the circumstances and found that the circumstances do not demonstrate that Whitfield's consent was involuntary. The trial court found that the defendant was mature and criminally experienced and that there were no physical threats and minimal coercive tactics. Therefore, the trial court determined by the totality of the circumstances that Whitfield voluntarily consented to his saliva sample being seized.
 {¶ 23} Under these circumstances we conclude that the trial court did not err in overruling the motion to suppress the DNA evidence that was collected and held by the State of Ohio in connection with another case where the sample was given voluntarily by the defendant for that other case and investigation. Whitman's assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 Cupp, P.J., and Bryant, J., concur.