JOURNAL ENTRY and OPINION
{¶ 1} The State of Ohio appeals from the judgment of the Cuyahoga County Court of Common Pleas, which granted Albert Washington's motion to suppress. On appeal, the State assigns the following error for our review:
"I. The trial court erred when it granted the defendant's motion to suppress when there was reasonable articulable suspicion and probable cause that the defendant was engaged in criminal activity and a search of his automobile was justified."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 3} On February 18, 2005, the Cuyahoga County Grand Jury indicted Washington for one count of drug trafficking and one count of possession of criminal tools. Washington pled not guilty at the arraignment, and thereafter, filed a motion to suppress, which the trial court granted.
 COURT'S FINDINGS {¶ 4} After receiving testimony at the suppression hearing, the trial court made the following findings:
"The Court: Consent — it is interesting for that statement. Iunderstand why he is making this argument about consent. But thatdoesn't answer the question about, if consent is given as aresult of an unlawful arrest, is it an invalid consent? So thedetectives, between them, are contradictory about what they thinkthey saw. One says he didn't see anything being exchanged. Onesays that he did, yes, he did. Clearly, we both are aware of thefact — or we are all aware of the fact that they saw that bag ofmarijuana and the beer can. But at that point, without knowingwhat the procedures are what the procedures are based upon, theCourt is of the opinion that the arrest is unlawful, and at thatpoint they had no right to detain him. And it is clear that theydid detain him on a minor misdemeanor. Therefore, the Court findsthat the search was unreasonable and violative of theFourth Amendment. And, therefore, the Motion to Suppress isgranted."[1]
 {¶ 5} Upon reviewing the record, we conclude that the judge's findings are supported by competent, credible evidence. The State presented two detectives, Williams and Harris, who testified that on December 15, 2004, they were on routine patrol in the area of 2435 Unwin Avenue in the City of Cleveland. Detective Williams testified that he observed an automobile with a male in the passenger seat, and another male leaning in the window. Detective Williams stated that as he pulled the patrol car directly behind the vehicle, he observed what he believed to be a hand-to-hand transaction.
 {¶ 6} Detective Williams exited the patrol car and approached the driver's side of the vehicle. He saw Washington sitting in the driver's seat with a bottle of beer and a bag of marijuana in his lap. Detective Williams testified that he ordered Washington out of the vehicle, immediately handcuffed him, patted him down, and placed him in the rear of the patrol car. Detective Williams also removed the back seat passenger, handcuffed him, and placed him in the rear of the patrol car.
 {¶ 7} Detective Williams testified that Washington gave him consent to search the vehicle, and, upon searching the vehicle, he recovered five individual bags with small amounts of marijuana from the glove compartment.
 {¶ 8} On cross-examination, Detective Williams testified as follows regarding the encounter:
"Q: I am not asking your opinion, sir. I am just asking you,based upon, okay, what you saw or didn't see, I just want toknow, very simply, did you see anything being transferred by handfrom my client to anybody else, yes or no?
 A: No.
 Q: Did you get the identity of the other individual?
 A: Yes.
 Q: Did you know if that other individual was a cousin of myclient?
 A: Yes.
 Q: And, in fact, he had been sitting in the car, and was justgetting out of the car and leaning in and just saying,"Good-bye"?
 A: I don't know.
 Q: How long did you watch the car?
 A: We pulled directly behind the vehicle. It had to be withinfive to ten seconds.
* * *
Q: Now the marijuana that was in my client's lap, according toyour testimony, I believe, 1.61 grams; am I right?
 A: I would have to look at the SIU report.
 Q: If the SIU report shows that, would that be correct?
 A: If it shows that, yes.
 Q: All right. And you gave the other person who had a smallamount of marijuana a citation?
 A: He was written a citation, yes.
 Q. Correct. In other words, this means it was just like atraffic ticket?
 A: Yes.
 Q: Because having less than 200 grams of marijuana is a minormisdemeanor, right?
 A: Correct.
 Q: And if you produce an identification, and if it verifiesthat you are who you say you are, and you sign the citation andcooperate on the minor misdemeanor, you are not permitted, underlaw, to arrest somebody, right?
 A: I don't understand the question. Would you repeat it?
 Q: Sure. What, under what factors, do you know are you allowedto arrest a person for a minor misdemeanor?
 A: Under 200 grams we usually issue a formal citation.
 Q: A very minor misdemeanor?
 A: Right.
 Q: And do you arrest people for that?
 A: Sometimes.
 Q. And you would agree with me that 1.61 grams is a minormisdemeanor, isn't it?
 A: Yes.
 Q: Okay. And an open container is similarly a minormisdemeanor?
 A: In a motor vehicle, yes.
 Q: Okay. And Mr. Washington gave you his name, didn't he?
 A: Yes.
 Q. He identified himself?
 A: Yes.
 Q. And produced his identification?
 A: Yes.
 Q: And he was willing to sign the citation?
 A: I didn't offer him a citation.
 Q: But he gave you no indication that he wasn't willing tosign anything, did he?
 A: No.
* * *
Q: And you indicated to Judge Russo that he was arrested; am
 I right?
 A: Yes."[2]
 {¶ 9} Detective Harris testified that when he approached the vehicle, it appeared that Washington handed an object to the male who had been leaning into the car. And, when the individual noticed his presence, he dropped a bag of marijuana to the ground, and tossed a marijuana joint into the car.
 {¶ 10} On cross-examination, Detective Harris testified as follows:
"Q: Detective, I am unclear. Is it your testimony that you sawwhat was handed from one individual to another?
 A: I seen a bag of marijuana in his hand as he extended hishand from the passenger's side of the car into the driver'sside.
 Q: What I am asking you, did you see anything that wasactually handed from one individual to another?
 A: Yes, I did.
 Q: And this came from inside of the car out, or outside of thecar in?
 A: From — the object was inside of the vehicle when I seenit.
* * *
Q: Was my client's car blocked?
 A: When we pulled in, it was, but this was next to a fence.
 Q: Was he free to leave?
 A: Not once we started our investigation and our interview hewasn't.
 Q: If he wanted to leave then, could he?
 A: Not at that point, sir.
 Q: Once he was in the police car, he wasn't free to leave, washe?
 A: No, sir."[3]
 MOTION TO SUPPRESS {¶ 11} In its sole assigned error, the State argues the trial court erred in granting Washinton's motion to suppress. We disagree.
 {¶ 12} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[4] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[5] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[6]
 {¶ 13} The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification.[7] Section 14, Article I of the Ohio Constitution protects the same interests in a manner consistent with the Fourth Amendment to the United States Constitution.[8]
 {¶ 14} In the instant case, it is undisputed that Detectives Williams and Harris arrested Washington for a minor misdemeanor. An offense classified as a minor misdemeanor is, by definition, one for which the maximum penalty is a fine of $100.[9]
That is, even if the offender is found guilty beyond a reasonable doubt of committing the offense, he will not be incarcerated. Consequently, it is not necessary for an officer to arrest an offender for committing a minor misdemeanor offense unless he has reason to believe that the offender will not respond to the summons or pay the fine.
 {¶ 15} R.C. 2935.26 protects an officer's interest, and the interest of the public, in making arrests in those situations by allowing officers to arrest the offenders that are least likely to respond or pay, i.e., offenders who fail to provide adequate identification, offenders who refuse to sign the citation, and offenders who failed, in the past, to pay a fine assessed against the offender for a previous commission of the same misdemeanor offense. Thus, effective law enforcement is not impaired by refusing to allow officers to arrest individuals for minor misdemeanor offenses when none of the exceptions set forth in R.C. 2935.26 applies.
 {¶ 16} Here, none of the exceptions set forth in R.C. 2935.26
applies. Detective Williams testified that Washington gave his name, produced identification, and never indicated that he would be unwilling to sign a citation. However, Detective Williams testified that he chose not to offer Washington a citation. Absent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule.[10]
 {¶ 17} However, the State argues that Washington consented to the search of the automobile. We are not persuaded.
 {¶ 18} Whether consent is voluntary or the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the facts and circumstances.[11] The burden is on the State to demonstrate voluntariness of consent.[12]
 {¶ 19} In order to meet its burden, the State must show by clear and convincing evidence that the consent was freely and voluntarily given.[13]
 {¶ 20} Important factors in determining whether a consent was voluntary are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.[14]
 {¶ 21} The following exchange took place at the suppression hearing:
"Q: So it's your position that the entire search was basedupon consent?
 A: Pretty much.
 Q: Well, pretty much doesn't cut it for us in Court.
 A: Yes. Yes.
 Q: Is that your testimony?
 A: He gave me consent to search the vehicle.
 Q: And that is the minute he was in your police car?
 A: He was sitting in my car.
 Q: And you had already Mirandized him, because you had alreadytold him of the property that you had Mirandized him on, right?
 A: Because that is why I was asking him questions.
* * *
Q: Well, would you agree, Detective, that you Mirandize peoplewhen they are arrested because before they are arrested you don'tneed to Mirandize them, right?
 A: I give them their rights when I question them. I ask themquestions and I just do it.
 Q: But you mean while he is Mirandized and inside your policecar?
 A: Yes.
 Q: He wasn't free to open the door and leave, was he?
 A: The door was open. Actually, I had another officer standingback.
 Q: Well, here is the point then. I don't mean to belabor it.Was he free to go, yes or no?
 A: At the time?
 Q: Yes. He could have just got up and said, "I am going"?
 A: After I finished questioning him, he was more than able toleave.
 Q: Nobody stopped him from doing that?
 A: No.
 Q: Do you mean to tell me, if he wanted to leave, he couldjust go ahead and leave?
 A: No."[15]
 {¶ 22} A review of the above record indicates that the consent was not voluntary. Washington sat handcuffed in a police cruiser, having already been Mirandized. Under the totality of the circumstances, the average person would not have felt free to walk away. Washington was not free to leave. In addition, Detective Harris, in contradicting Detective Williams' testimony, testified that Washington was not free to walk away.
 {¶ 23} Consent is not voluntary if it is the product of coercion. Whether the "consent" was the product of coercion must be determined from the totality of the circumstances.[16]
On the totality of those circumstances, as portrayed by this record, we conclude that the detectives searched the automobile absent Washington's voluntary consent.
 {¶ 24} As such, there is no basis in the record or in law to disturb the determination of the trial court that the search was unreasonable, and, as a consequence, that evidence seized as a result thereof should be suppressed.[17] Accordingly, we overrule the State's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Celebrezze, Jr., J., Concur.
[1] Tr. at 36-37.
[2] Tr. at 14-18.
[3] Tr. at 27-28.
[4] See State v. Robinson (1994), 98 Ohio App.3d 560; Statev. Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th
Dist. No. 90CA7.
[5] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[6] See State v. Harris (1994), 98 Ohio App.3d 543.
[7] United States v. Cortez (1981), 449 U.S. 411, 417; Reidv. Georgia (1980), 448 U.S. 438, 440; Terry v. Ohio (1968),392 U.S. 1, 19.
[8] State v. Lindway (1936), 131 Ohio St. 166; State v.Burkholder (1984), 12 Ohio St.3d 205.
[9] Crim.R. 4.1(B); R.C. 2901.02(G).
[10] State v. Jones, 88 Ohio St.3d 430, 2000-Ohio-374.
[11] Ohio v. Robinette (1996), 519 U.S. 33, 40,117 S.Ct. 417, 136 L.Ed.2d 347, citing Schneckloth v. Bustamonte (1973),412 U.S. 218, 248-249, 93 S Ct. 2041, 36 L.Ed.2d 854.
[12] State v. Whitfield, 3rd Dist. No. 1-04-80,2005-Ohio-2255, P17, citing Florida v. Royer (1983),460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229.
[13] Florida v. Royer, 460 U.S. 491, at 497; State v.Pierce (1998), 125 Ohio App.3d 592, 598; State v. Jackson
(1996), 110 Ohio App.3d 137, 142.
[14] State v. Lattimore, 10th Dist. No. 03AP-467,2003-Ohio-6829.
[15] Tr. at 20-22.
[16] Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854.
[17] Mapp v. Ohio (1961), 367 U.S. 643.