[Cite as *State v. Antio*, 2022-Ohio-1398.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110658 |
| v. | : | |
| DAVID ANTIO, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 28, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-644599-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jasmine Jackson, Assistant Prosecuting Attorney, *for appellee*.

Russell S. Bensing, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, David Antio ("Antio"), appeals from his felonious assault conviction following a jury trial. He raises the following assignment of error for review:

1. Appellant received ineffective assistance of counsel as a result of defense counsel's failure to file a motion to suppress the state's use of Cellebrite cell phone text messages between him and his codefendant in violation of his constitutional rights.

{¶ 2} After careful review of the record and relevant case law, we affirm Antio's conviction.

## I. Procedural and Factual History

{¶ 3} In October 2019, Antio was named in a single-count indictment, charging him with felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. The indictment stemmed from allegations that Antio and his codefendant, Joseph Noah ("Noah"), physically assaulted the victim, David Asmondy ("Asmondy").

{¶ 4} Following several continuances, the matter proceeded to a jury trial. On behalf of the state, Asmondy testified that on September 2, 2019, he arrived at the workplace of his then girlfriend, Caitlyn Rae Smith ("Smith"), to retrieve their child's car seat from her vehicle. Asmondy explained that Smith, who was working as a bartender, was intoxicated. Asmondy testified that he and Smith engaged in a verbal argument inside the bar because he was upset that she was drinking while she was working. When Asmondy exited the bar, he was approached by two men who suddenly pushed Asmondy against his vehicle and started hitting him. Asmondy testified that he feared for his life and did not understand why he was being attacked by men he did not know and had never seen before.

{¶ 5} Asmondy eventually ran away from his assailants and called 911. When the police responded to the scene, Asmondy provided a brief statement and was transferred to University Hospitals for medical treatment. Asmondy sustained scrapes and abrasions on his face and neck, and was diagnosed with a broken nose. He suffered from "terrible headaches," and was taken to the emergency room the day after the incident due to ongoing chest pain, difficulties breathing, and problems with his eyesight. He was diagnosed with a "head injury, concussion, contusion," and was instructed to schedule a follow-up appointment with a primary-care physician. Asmondy testified that his diminished eyesight prevented him from working and required him to undergo physical therapy for a period of five or six weeks.

{¶ 6} Several weeks after the incident, Asmondy attended a car show with Smith and a group of friends. At some point during the event, Asmondy observed an individual, later identified as codefendant Noah, whom he immediately recognized as one of his assailants. Asmondy testified that Smith "swore to [him] that she didn't know who [Noah] was." (Tr. 272.) One of Smith's friends, however, was familiar with Noah and was able to identify him as the person Asmondy had seen at the car show. Asmondy subsequently contacted the investigating detectives and provided the information implicating Noah in his assault.

{¶ 7} Smith testified on behalf of the state. She confirmed that she got into a verbal argument with Asmondy while she was working at a bar on September 2,

2019. Smith further confirmed that Antio and Noah were at the bar on the night of the incident.

{¶ 8} Detective Scott Traxler ("Det. Traxler") of the city of Parma Police Department, testified that he was assigned as the lead detective in this matter. In the course of his investigation, Det. Traxler reviewed relevant witness statements, audio of Asmondy's 911 call, the on-scene officer's field report, surveillance video footage depicting the inside of the bar and its patrons prior to the altercation, and surveillance footage from the bar's parking lot that captured the incident in its entirety. Det. Traxler also conducted an interview with Asmondy and took photographs of his injuries. Det. Traxler testified that he quickly gathered leads on potential suspects by comparing the names contained in bar receipts with vehicle registration information pertaining to a vehicle that was seen leaving the scene of the incident shortly after Asmondy's assault. Ultimately, Det. Traxler contacted Antio and notified him that there was surveillance-video footage linking him to the open investigation into the assault. Det. Traxler then advised Antio that it was in his best interests to come into the station and give his "side of the story." (Tr 376.) Antio did not commit to cooperating with the investigating detectives at that time. However, he did confirm that he owned a vehicle matching the make and color of a vehicle seen leaving the scene.

{¶ 9} During Det. Traxler's direct examination, the surveillance footage of the incident was played in the presence of the jury. In pertinent part, the video footage captured two white males' approach Asmondy as he was attempting to enter his

vehicle. The first man, who was wearing a black shirt, a baseball cap, and dark-colored shorts, immediately struck Asmondy in the face, and continued to strike Asmondy with a closed fist as they wrestled on the ground. The first man struck Asmondy approximately 18 times in the head and face area. The second man, who was wearing a red shirt and dark-colored pants, repeatedly kicked and punched Asmondy while he was struggling with the first man on the ground. Eventually, the assailants allowed Asmondy to stand up. They pushed him towards the back of the parking lot and made hand gestures directing him to leave the scene. The assailants then reentered the bar, paid their bill, and immediately exited the bar.

{¶ 10} Det. Traxler explained that he was "very comfortable with the identification of Mr. Antio" as being the assailant in the black shirt, baseball hat, and dark-colored shorts based on (1) his conversation with Antio, (2) his review of the interior and exterior surveillance footage, (3) the information gathered from the bar receipts, and (4) his comparison of still photographs captured by the bar's security system to Antio's driver's license photograph. (Tr. 380-383.) Det. Traxler was subsequently able to identify Noah as the second assailant based on the supplemental information Asmondy learned while attending a car show with his friends. Det. Traxler explained that once Asmondy learned that Noah may have been involved in the assault, the investigating detectives were able to compare still photographs of the second assailant to information gathered from searching Noah's name in certain police databases. Based on the foregoing information, arrest warrants were issued for Antio and Noah.

{¶ 11} Det. Traxler had the opportunity to speak with Noah at the time of his arrest. Det. Traxler stated that Noah expressed remorse and "felt bad about what had happened." (Tr. 387.) Det. Traxler was not present at the time Antio was arrested and brought in for processing. However, he testified that he learned from his colleagues that Antio had voluntarily consented to the search of his cell phone.

{¶ 12} Detective Michael Klein ("Det. Klein"), formally of the city of Parma Police Department, testified that he assisted Det. Traxler in the investigation into Asmondy's assault. Det. Klein testified that he recovered the surveillance video footage and conducted the initial interview of Antio following his arrest. During this interview, Antio was read his *Miranda* rights and advised that Det. Klein would consider Antio's "cooperability" and "willingness [to speak]" when rendering a bond recommendation. (Tr. 352.) Thereafter, Antio cooperated with the detectives and admitted that he was at the bar on the night of the incident. He further conceded that he was in the parking lot at the time his friend confronted Asmondy. At the close of the interview, Det. Klein notified Antio that the investigating detectives would need to access his cell phone in order to conclude their investigation into the incident. (Tr. 355.) Det. Klein testified that he explained his "options for accessing the data on the phone," but provided Antio with the option to turn over his phone at that time so that Det. Klein could return the cell phone before Antio was released on bond. (Tr. 355.) Ultimately, Antio "gave [Det. Klein] access to his phone and was cooperative." (Tr. 367.)

{¶ 13} Det. Klein testified that he processed Antio's cell phone using a software system referred to as Cellebrite. The software system allowed the investigating detectives to review and download conversations that were relevant to their criminal investigation. In pertinent part, the detectives recovered text messages exchanged between Antio and Noah. During their text message conversation, Noah warned Antio that Noah had been "made." Subsequent text message conversations reveal that Antio and Noah had been contacted by investigating detectives and were unsure whether warrants would be issued for their arrests.

{¶ 14} At the conclusion of trial, Antio was found guilty of felonious assault as charged in the indictment. He was later sentenced to a one and one-half year term of community-control sanctions.

{¶ 15} Antio now appeals from his conviction.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

{¶ 16} In his sole assignment of error, Antio argues defense counsel rendered ineffective assistance of counsel by failing to file a motion to suppress the information gathered from the warrantless search of his cell phone.

{¶ 17} To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense, i.e., that but for the deficient performance, the result of the proceeding would likely have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538

N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It is well settled that the defendant has the burden of demonstrating both prongs of the test. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶ 18} In Ohio, every properly licensed attorney is presumed to be competent. *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Thus, in evaluating counsel's performance on a claim of ineffective assistance of counsel, the court must give great deference to counsel's performance and "indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689; *see also State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.), quoting *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69 ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'").

{¶ 19} The failure to file a motion to suppress is not per se ineffective assistance of counsel. *See, e.g., State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 31; *State v. Watts*, 8th Dist. Cuyahoga No. 104188, 2016-Ohio-8318, ¶ 17, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Rather, a trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if there is a reasonable probability that, had the motion to suppress been filed, it would have been granted and that suppression of the

challenged evidence would have affected the outcome of the case. *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 17 (8th Dist.). Counsel is not required to file a motion to suppress if doing so would be a futile act. *See, e.g., Musleh* at ¶ 31; *State v. Armstrong*, 8th Dist. Cuyahoga No. 103088, 2016-Ohio-2627, ¶ 30.

{¶ 20} In this case, Antio argues defense counsel was deficient for failing to file a motion to suppress his text messages because the warrantless search of his cell phone was the product of coercion and improper interrogation tactics. Antio contends that the record, including the testimony of Det. Klein, does not support the proposition that he freely and voluntarily consented to the search of his phone. He further asserts that there were no exigent circumstances that would have prevented the investigating detectives from obtaining a valid search warrant. Finally, Antio states that he was prejudiced by his counsel's failure to file a motion to suppress, stating:

> Had defense counsel filed a motion to suppress the Cellebrite extraction, established law would require that the trial court grant such motion. The remaining insufficient identification evidence of Antio's role in this matter, i.e., grainy still photographs taken from the otherwise shadowy and indistinct video surveillance of Local Bar 30's parking lot, would likely have created reasonable doubt with the jury and led to his acquittal.

{¶ 21} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Ohio Constitution, Article I, Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998). "Modern understandings of the Fourth Amendment recognize that it serves to protect an individual's subjective expectation

of privacy if that expectation is reasonable and justifiable." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 14, citing *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *See Katz* at 350. Warrantless searches and seizures are considered per se unreasonable, unless an exception to the warrant requirement applies. *Id.* at 357.

{¶ 22} Relevant to this appeal, the Ohio Supreme Court has recognized that "an individual has a privacy interest in the contents of a cell phone that goes beyond the privacy interest in an address book or pager." *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 24. Thus, absent an exception to the warrant requirement, "an officer may not conduct a search of a cell phone's contents incident to a lawful arrest without first obtaining a warrant." *Id.*

{¶ 23} One such exception to the warrant requirement is voluntary consent. *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 32 (8th Dist.), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state bears the burden of proving voluntary consent, and it must prove by "clear and positive" evidence that the consent was "freely and voluntarily" given and was not contaminated by any duress or coercion. *Id.*; *State v. Rodriguez*, 8th Dist. Cuyahoga No. 98422, 2013-Ohio-491, ¶ 21.

{¶ 24} The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth* at 227. The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness; i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

> Important factors in determining whether a consent was voluntary are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*State v. Washington*, 8th Dist. Cuyahoga No. 86370, 2006-Ohio-568, ¶ 20. Additionally, "[k]nowledge of the right to refuse is not a prerequisite to voluntary consent to a search, but consent must not have been coerced by threats or force or by a claim of lawful authority." *State v. Moncrease*, 8th Dist. Cuyahoga Nos. 76145, 76146, and 76147, 2000 Ohio App. LEXIS 1650, 9 (Apr. 13, 2000).

{¶ 25} Having reviewed the record in its entirety, we need not reach any conclusion as to the first prong of the *Strickland* analysis. Presuming, for the sake of argument, that the state failed to satisfy its burden to prove Antio's consent to the search was freely and voluntarily given, we find defense counsel's failure to object or file a motion to suppress was not prejudicial given the overwhelming evidence of Antio's guilt.

{¶ 26} As stated, Antio was convicted of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. The statute provides that "no person shall knowingly * * * cause serious physical harm to another." R.C. 2901.01(A)(5) defines "serious physical harm," in relevant part, as:

> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> * * *
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 27} On appeal, Antio's argument concerning the prejudice prong of the ineffective assistance of counsel analysis does not dispute any specific element of the felonious assault offense, including evidence related to the assailant's mens rea or the scope of the injuries sustained by Asmondy. Rather, Antio's position on appeal suggests that if the text messages recovered from his phone were suppressed, there is no remaining evidence identifying him as the assailant of Asmondy's assault. We disagree.

{¶ 28} "The identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. Deal*, 8th Dist. Cuyahoga No. 92642, 2010-Ohio-153, ¶ 11, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315; *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082. In this case, the evidence presented at trial undoubtedly demonstrated that Antio was in the bar on the night of the incident. Smith testified that Antio was present inside

the bar that evening, and his bar receipt established that he paid his bill with a credit card shortly after the assault occurred. Similarly, Det. Klein testified that Antio conceded that he was in the parking lot at the time his "friend walked out to the parking lot to, you know, talk to the victim." (Tr. 354.) Det. Traxler also confirmed that a vehicle registered in Antio's name matched the "general description of the vehicle seen leaving the area" following the assault. (Tr. 374.)

{¶ 29} Finally, regarding Antio's involvement in the incident, we are unpersuaded by Antio's suggestion that the jury could not reasonably rely on the video and still images introduced at trial because they were "grainy" or "otherwise shadowy and indistinct." This court has reviewed the relevant exhibits in their entirety. Collectively, the video footage captured the events that transpired prior, during, and after the assault of Asmondy in the bar parking lot. After careful review, we agree that assailants' faces were not clearly identifiable in the video footage captured by the surveillance cameras located in the bar's parking lot. With that said, however, the video footage captured by the interior surveillance cameras established, beyond a reasonable doubt, that the two men responsible for Asmondy's injuries were the two patrons seen leaving the front door of the bar seconds before Asmondy was confronted in the parking lot. In turn, Det. Traxler testified that he was able to positively identify Antio as the man in the black shirt, black hat, and dark-colored shorts after accessing the Bureau of Motor Vehicles' database and comparing the still images recovered from the bar's surveillance system to Antio's driver's license photograph. (Tr. 378-380.) In our view, the quality of the video

footage and the still images, when viewed together, were sufficient to permit the jury to intelligently determine whether Antio was one of the men depicted therein. Moreover, the jury was free to rely on Det. Traxler's testimony that he "was very comfortable with the identification of Mr. Antio" based on the information gathered during his investigation in this matter. (Tr. 383.) When asked to elaborate, Det. Traxler stated:

> Well, for one, the vehicle. Two, very comfortable with the comparison of the photographs and video surveillance versus the BMV photos, and my conversation with [Antio] on the phone.

(Tr. 383.)

{¶ 30} Under the totality of these circumstances, we find the record contains sufficient evidence identifying Antio as one of the assailants. The evidence supporting this conclusion relies on information that was gathered by the investigating detectives before Antio was arrested and before his cell phone was searched. While the text messages exchanged between Antio and Noah corroborated their involvement in Asmondy's assault, suppression of the challenged evidence would not have affected the outcome of trial. Accordingly, we find that Antio failed to establish any prejudice arising from defense counsel's failure to file a motion to suppress the text messages recovered from his cell phone.

{¶ 31} Antio's sole assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR